| | |
|---|---|
| David B. Rosenbaum, 009819<br>Theresa Rassas, 023416<br>Brandon T. Delgado, 035924<br>OSBORN MALEDON, P.A.<br>2929 North Central Avenue, Suite 2000<br>Phoenix, Arizona  85012-2793<br>(602) 640-9000<br>drosenbaum@omlaw.com<br>trassas@omlaw.com<br>bdelgado@omlaw.com | Leah S. Freed, 021332<br>OGLETREE, DEAKINS, NASH,<br>SMOAK & STEWART, P.C.<br>2415 East Camelback Road, Suite 800<br>Phoenix, Arizona 85016<br>(602) 778-3700<br>leah.freed@ogletree.com |

*Attorneys for Defendant Michael J. Bidwill and Arizona Cardinals Football Club LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brittany Neuheisel,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Bidwill, et al.,<br><br>    Defendants. | No. CV-25-01927-PHX-MTL<br><br>**DEFENDANTS' MOTION TO COMPEL ARBITRATION OF BRITTANY NEUHEISEL'S CLAIMS**<br><br>(Oral Argument Requested) |

Having threatened to file unfounded and scandalous claims against Defendants unless they paid her a king's ransom, Plaintiff has now followed through on her extortionate threat.[1]  Plaintiff's Complaint is baseless, and should never have been filed. Regardless, Plaintiff and Defendants agreed that any disputes relating to her employment would be arbitrated, and Defendants now seek to hold her to that contract.

Brittany Neuheisel ("Neuheisel") has sued her former employer, the Arizona

---

[1] When Plaintiff filed this action in Maricopa County Superior Court, her lead counsel, who signed the pleading with co-counsel, was suspended from the practice of law in Arizona. Doc 1, Ex. 1; *see* June 2, 2025, Order issued in *McDonough et al. v. Bidwill et al.*, CV-24-00764-PHX-DWL, Doc. 94. In addition, Plaintiff's lead counsel has since been suspended from practicing law in this District. *Id.* Accordingly, the Court's docket in this case appropriately omits lead counsel.

Cardinals Football Club LLC, and its President Michael J. Bidwill (collectively, the "Cardinals" or "Club"), for discrimination and other employment related claims based on events that allegedly occurred while she was "working for" the Cardinals and Bidwill. (Compl. ¶ 23.) But none of these claims belongs in this Court. Neuheisel has agreed to arbitrate "all disputes, claims, or controversies . . . that may arise between [her and the Club]", including without limitation those "arising out of or relating" to discrimination or her employment with the Club. (Koeninger Decl. ¶ 3, Ex. A at 1.) Because all of Neuheisel's claims squarely fit within her agreement to arbitrate, the Court should stay her claims and compel them to arbitration, pursuant to Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2.

I.     BACKGROUND

    A.     **Neuheisel's Employment with the Club**

The Club employed Neuheisel as an assistant from 2019 to 2025. (Compl. ¶ 1.) In consideration of her employment, Neuheisel signed an agreement ("Arbitration Agreement") under which she and the Club agreed that "all disputes, claims or controversies" between them will be resolved exclusively through final and binding arbitration. (Declaration of David M. Koeninger ("Koeninger Decl.") ¶ 3, Ex. A at 1.)

Specifically, Neuheisel's Arbitration Agreement provides that:

> [A]ll disputes, claims, or controversies that exist or that may arise between them, including without limitation any dispute arising out of or relating to the terms of this Certificate, my employment with Employer, or otherwise, shall be referred to the NFL Commissioner for binding arbitration, except as otherwise provided herein.
>
> . . .
>
> [A] dispute relating to or arising out of discrimination . . . shall be submitted to and settled by final, binding, and conclusive arbitration. . .
>
> . . .
>
> [T]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute concerning the interpretation, applicability, enforceability or formation of this document including without limitation any claim that all or any part of this document is void or voidable.

> . . .
>
> The Parties agree that the purpose of this provision is to ensure that any and all disputes that may arise between them shall be resolved through binding, conclusive arbitration as opposed to court or administrative litigation

(Koeninger Decl., Ex. A at 1–2 ("Dispute Resolution; Authority of the Commissioner to Arbitrate Disputes").)

### B. Neuheisel's Complaint

On February 6, 2025, Neuheisel filed this lawsuit alleging employment-based claims of constructive discharge, wrongful discharge, discrimination, and intentional infliction of emotional distress. (Compl. ¶¶ 60–75.) Specifically, Neuheisel alleges that the Club took various actions during her employment, which she describes as "working conditions" for the Cardinals and Bidwill, in a purported "effort to driver her to leave the Cardinals." (Compl. Intro., ¶¶ 1–61.) These "working conditions" form the basis of all her claims.

## II. LEGAL STANDARD FAVORING ARBITRATION

A written agreement to arbitrate involving commerce is governed by the FAA, which declares that such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[2] The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. § 4. Thus, "a district court's role under the FAA is 'limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *McDonough v. Bidwill*, No.

---

[2] Neuheisel's employment agreement with the Club involves interstate commerce and is subject to enforcement under the FAA. *See, e.g., Flores v. Nat'l Football League*, 658 F. Supp. 3d 198, 205–06 (S.D.N.Y. 2023) (analyzing NFL club employment agreements under the FAA's standards for purposes of motion to compel).

3

1  CV-24-00764-PHX-DWL, 2025 WL 487171, at *4 (D. Ariz. Feb. 13, 2025) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

"The FAA demonstrates the federal policy of favoring arbitration agreements." *Pettibone v. Chapman Auto. Grp.*, No. CV10-2786-PHX-JAT, 2011 WL 5547775, at *1–2 (D. Ariz. Nov. 15, 2011). Accordingly, any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). In other words, a controversy falls within a valid arbitration clause "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Leonard v. Equitable Life Assurance Soc'y of U.S.*, 28 F. App'x 686, 687 (9th Cir. 2002). "If the court finds that an arbitration clause is valid and enforceable, the court should stay or dismiss the action to allow the arbitration to proceed." *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 940 (9th Cir. 2009).

### III. ARGUMENT

#### A. A valid agreement to arbitrate exists.

Under the FAA, "[t]he Court's initial task is to determine whether a valid arbitration agreement exists between the parties." *Myers v. Racerworld LLC*, No. CV-21-01244-PHX-MTL, 2022 WL 1569080, at *3 (D. Ariz. May 18, 2022). In performing that task, the Court may resolve an opposing party's "challenge that an agreement to arbitrate was never formed," but validity challenges, such as "fraud, duress, or unconscionability," may be "delegated to an arbitrator." *Bidwill*, 2025 WL 487171, at *4, 12.

Neuheisel cannot seriously dispute that an agreement to arbitrate was formed between her and the Club. Neuheisel signed an agreement that expressly provides that "[i]n consideration of [her] employment" with the Club, Neuheisel was agreeing to the terms contained therein. (Koeninger Decl. ¶ 3, Ex. A at 1). One of the terms is titled "**Dispute Resolution; Authority of the Commissioner to Arbitrate Disputes**." (*Id.*) It

4

includes a series of provisions repeating that "all disputes" or "claims" that may arise between the parties must be resolved through arbitration. (*Id.* at 1–2)

On issues of validity, the parties also agreed that "the arbitrator, and not any federal, state or local court or agency, shall have the exclusive authority to resolve any dispute . . . including without limitation any claim that all or any part of this document is *void or voidable.*" (*Id.* at 2 (emphasis added).) "Where, as here, the parties have agreed that the arbitrator will decide issues regarding whether the arbitration agreement is 'void or voidable,' they have 'clearly and unmistakably' delegated to the arbitrator the power to determine whether their dispute is subject to arbitration." *Flores v. Nat'l Football League*, 658 F. Supp. 3d 198, 211 (S.D.N.Y. 2023) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69–70 (2010)); *Bidwill*, 2025 WL 487171, at *12 (collecting cases with the same language and compelling the plaintiff's claims to arbitration). Thus, if Neuheisel chooses to attack the agreement's enforceability or validity, she must do that in arbitration.

**B.     The agreement encompasses this dispute.**

Next, the Court must "determine whether the instant dispute falls within the scope of the Agreement." *Myers*, 2022 WL 1569080, at *6. "The scope of an arbitration agreement is governed by federal substantive law." *Id.* (quoting *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994)). As already mentioned, "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

By its terms, Neuheisel's agreement to arbitrate applies broadly to "all disputes, claims, or controversies that exist or that may arise between" Neuheisel and the Club. (Koeninger Decl. ¶ 3, Ex. A at 1.) This includes "without limitation any dispute arising out of or relating to [Neuheisel's] employment with [the Club]." (*Id.* at 1.) It also includes any "dispute relating to or arising out of discrimination." (*Id.* at 2.)

All of the claims asserted in the Complaint fall squarely within the scope of these provisions. Each of the four "causes of action" is premised on allegations regarding Neuheisel's "working conditions" while an employee of the Club. Specifically, Neuheisel

1 alleges claims of constructive discharge, wrongful discharge, discrimination, and
2 intentional infliction of emotional distress. (Compl. ¶¶ 60–75.) Neuheisel knowingly
3 agreed to arbitrate these claims, all of which arise out of or relate to her employment with
4 the Club.

### C. The claims against the Club President must also be arbitrated.

6 Neuheisel cannot circumvent her agreement to arbitrate by including the Club
7 President as an individually named defendant. Courts regularly compel arbitration of
8 employment-related claims brought against a defendant's nonsignatory supervisors and
9 agents. *See, e.g., Gambardella v. Pentec, Inc.*, 218 F. Supp. 2d 237, 241–242 (D. Conn.
10 2002) ("[C]laims against an individual employee that arose out of the relationship between
11 plaintiff and that individual's employer, which was the subject of a mandatory arbitration
12 agreement, were also subject to mandatory arbitration."); *Cicchetti v. Davis Selected
13 Advisors*, 2003 WL 22723015, at *3 (S.D.N.Y. Nov. 17, 2003) (compelling claims against
14 nonsignatory "supervisor" because the claims were "directly related" to the claims against
15 the employer, which were subject to the arbitration agreement between the employer and
16 plaintiff).

17 This is the rule in the Ninth Circuit. As explained by Judge Tuchi, "[t]he Ninth
18 Circuit [has] held that 'nonsignatories of arbitration agreements may be bound by the
19 agreement under ordinary contract and agency principles.'" *Eder v. N. Arizona Consol.
20 Fire Dist. #1*, No. CV-19-8101-PCT-JJT, 2019 WL 5579593, at *3 (D. Ariz. Oct. 29,
21 2019) (quoting *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir.
22 1986)). In *Eder*, the Court reasoned that "although the Board Members in the present
23 action did not sign the arbitration agreement themselves, they act on behalf of [the
24 signatory employer] generally and acted as agents of [the employer] in terminating
25 Plaintiff's employment." *Id.* The Court compelled Plaintiff's claims against the board
26 members to arbitration. *Id.*

27 Neuheisel's allegations confirm that she is suing over her alleged mistreatment
28 while "working for" or "working with" the Cardinals and Bidwill. She asserts that Bidwill

was acting in his role as "principal owner, chairman, and president" of the Club during Neuheisel's employment. (Compl. ¶ 2.) Indeed, she describes the actions Bidwill allegedly took as "working conditions." (*Id.* ¶ 61.) The Club can only act through its agents, which was Bidwill here. Accordingly, Neuheisel's claims against Bidwill and the Club must be arbitrated as the Employee Certificate demands.

Non-signatory defendants can compel arbitration not only under a pure agency theory, which plainly applies here, but also under the "alternative estoppel" theory. *Bonner v. Michigan Logistics Inc.*, 250 F. Supp. 3d 388, 399 (D. Ariz. 2017). This approach "takes into consideration the relationships of persons, wrongs, and issues." *Guglielmo v. LG&M Holdings LLC*, No. CV-18-03718-PHX-SMB, 2019 WL 3253190, at *5 (D. Ariz. July 19, 2019). Nonsignatories to an arbitration agreement can "compel signatories to arbitrate" when "the relationship between the signatory and nonsignatory defendants is 'sufficiently close' that not allowing [i]ndividual [d]efendants to compel [a plaintiff] into arbitration would eviscerate the underlying agreement." *Id.* "When the relationship between the persons, wrongs, and issues is a close one, nonsignatories can 'force a signatory into arbitration.'" *Id.*; *see also Shivkov v. Artex Risk Sols. Inc.*, No. CV-18-04514-PHX-SMM, 2019 WL 8806260, at *13 (D. Ariz. Aug. 5, 2019) (applying alternative estoppel were "Plaintiffs pleaded each of their claims against 'Defendants' as a whole, rarely distinguishing between the signatory and non-signatory Defendants").

In *Guglielmo*, the agreement did "not contemplate whether agents, members, or officers of the Defendant Company [were] covered by the arbitration clause." *Id.* But the individual defendants were "owners of Defendant Company and the issues between them and Plaintiffs [were] the same as between Plaintiffs and Defendant Company." *Id.* Thus, "[t]he people, alleged wrongs, and legal issues [were] deeply intertwined." *Id.* Accordingly, the Court held that the owners of the Defendant Company could "compel the Plaintiffs who signed the Contractor Lease to arbitrate" the claims against them. *Id.*

The lawsuit here is no different. Bidwill is the "principal owner, chairman, and president" of the Club. (Compl. ¶ 2.) The Club hired Neuheisel to work as Bidwill's

assistant, resulting in her signing the Employee Certificate. (*Id.* ¶ 1; Koeninger Dec. ¶ 3.) All of Neuheisel's claims arise from events that allegedly occurred during her employment as Bidwill's assistant. (*See generally* Compl.) And she brings those claims against the Club and Bidwill collectively without distinguishing between the two. (*Id.* ¶¶ 60–75.) Thus, Neuheisel's allegations confirm that the issues raised in this lawsuit and the relationship between Bidwill and the Club are deeply intertwined.

## IV. CONCLUSION

For the foregoing reasons, the Court should stay all of Neuheisel's claims in this action and compel Neuheisel to arbitrate her claims.[3]

DATED this 10th day of June 2025.

          OSBORN MALEDON, P.A.

          By: /s/ David B. Rosenbaum
              David B. Rosenbaum
              Theresa Rassas
              Brandon T. Delgado
              2929 North Central Avenue, Suite 2000
              Phoenix, Arizona 85012

              Leah S. Freed
              OGLETREE, DEAKINS, NASH,
              SMOAK & STEWART, P.C.
              2415 East Camelback Road, Suite 800
              Phoenix, Arizona 85016

              *Attorneys for Defendants Michael J. Bidwill and Arizona Cardinals Football Club LLC*

---

[3] Neuheisel's claims should be stayed while this motion to compel arbitration remains pending. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (holding that the FAA compels a stay "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration."); *see also Romo v. State Farm Fire & Cas. Ins. Co.*, No. CV-24-00544-TUC-RM, 2025 WL 1380476, at *1 (D. Ariz. May 13, 2025) (deciding motion to compel arbitration before requiring an answer to the complaint, and noting "federal courts have authority to hear certain pre-answer motions").